## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

TIMOTHY C. DEVINE

        Plaintiff,

    v.

UNITED STATES OF AMERICA,

        Defendant,

Case No. 01:18-00871-T-EDK

### COMPLAINT

Plaintiff Timothy C. Devine ("Devine" or "Plaintiff"), hereby files this Complaint for Refund under Section 7422(a) of the Internal Revenue Code of 1986, as amended (the "IRC") against Defendant the United States of America and alleges as follows:

### I.    NATURE OF THE DISPUTE

1. This action arises under the Internal Revenue laws of the United States for the recovery of income taxes and statutory interest thereon paid by Plaintiff for taxable years ending December 31, 2003 ("Tax Year 2003"), December 31, 2004 ("Tax Year 2004") and December 2005 ("Tax Year 2005").

2. In 2003, Devine began pursuing a career as a real estate professional. Among other things, Devine purchased, rehabilitated, and rented certain properties located in the Southern California area. In connection with his real estate business, Devine partnered with Shauna Giliberti ("Giliberti") with respect to a project involving the purchase, rehabilitation, and operation of a property. Devine agreed to fund the venture by way of loans and Giliberti agreed to contribute her purported expertise as a developer. Beginning in 2004 and continuing through 2008, Devine, through a limited liability company, lent substantial sums towards the venture.

REDACTED

3. From tax years 2003 though 2007, Devine made tax payments totaling $1,140,665 for income he received during those years. [See Exhibits 1-6]

4. In 2008, Devine's real estate business experienced a significant downturn. Giliberti breached many of the terms of her agreements with Devine. After several unsuccessful attempts to turn around the business, Devine ceased funding the venture with Giliberti. Devine entered into a settlement agreement with Giliberti concerning the amounts that Devine had loaned to the venture. However, Giliberti breached the terms of the settlement agreement resulting in a default judgment in favor of Devine and against Giliberti. Giliberti failed to satisfy the judgment.

5. Ultimately, Devine suffered a $2,925,326 loss in 2008. The devastating losses in Devine's real estate business impacted him for the next five years. From 2008 through 2013, Devine earned no reportable income. With no reportable income, Devine did not file tax returns for those years. *See* IRC § 6012.

6. Ordinarily, a taxpayer may elect to 'carryback' a net operating loss ("NOLs") for a period of up to two years. Carrying back a NOL allows a taxpayer to claim a refund by offsetting an NOL against taxable income from previous years. However, NOLs resulting from bad business debts may not became apparent until years after the debts are incurred. For this reason, IRC § 6511(d) permits taxpayers to claim a refund up to seven years later.

7. In response to the financial crisis of 2008, Congress enacted the American Recovery and Reinvestment Act of 2009 (the "ARRA") which provides, *inter alia*, eligible small businesses with the option to elect to carryback 2008 net operating losses ("NOLs") for up to five (5) years, instead of the usual two-year carryback period applied to NOLs. *See* American Recovery and Reinvestment Tax Act of 2009 Pub. L. No. 111–5 at § 1211, 123 Stat. 115.

REDACTED

February 17, 2009 ("PL 111-5").

8. The text of PL 111-5 provides that the election "shall be made in such manner as may be prescribed by the Secretary, and shall be made by the due date (including extension of time) for filing the taxpayer's return for the taxable year of the net operating loss." *Id.* § 1211(a)(iii).

9. On April 6, 2009, the Secretary of the Internal Revenue Service ("IRS") specified the manner of making a carryback election for 2008 NOLs in Revenue Procedure 2009–19, 9 Rev. Proc. 2009–19, 2009–14 I.R.B. 747 (Apr. 6, 2009). This procedure required eligible small businesses ("ESB") to attach to their tax return an election statement that clearly elects to carryback an NOL under § 172(b)(1)(H) and states the years of the carryback. *Id.* § 4.01(3).

10. On May 11, 2009, the IRS published Revenue Procedure 2009–26, 2009-19 I.R.B. 935 (May 11, 2009), modifying and superseding Rev. Proc. 2009-19 ("Rev. Proc. 2009-26"). This procedure eliminated the requirement for a special election statement. Pursuant to Rev. Proc. 2009–26, an ESB may make a carryback election by filing the appropriate tax form for the carryback year without submitting any special election statement. *Id.* § 4.01(3)(a).

11. However, Rev. Proc. 2009-26 created a requirement that affected the taxpayers' right to take advantage of the 5-year election provided in PL 111-5. Rev. Proc. 2009-26 required that the taxpayer making the election must file the appropriate tax return applying the NOL within six months after the due date for filing the taxpayer's return for the taxable year of the applicable 2008 NOL, or by April 17, 2009 plus six months, *i.e.* by October 15, 2009. *Id.* § 4.01(3)(a)(ii) and (b).

12. In issuing the October 15, 2009 deadline in Rev. Proc 2009-26, the IRS failed to follow the notice and comment and other procedural requirements of Administrative Procedure

Act ("APA").

13.    In 2013, Devine earned reportable income for the first time since 2008. Accordingly, Devine filed in 2014, Form 1040 tax returns for tax year 2013 and for all prior years back to 2008.

14.    Devine did not claim a bad debt loss on his tax year 2008 tax return until 2016, when the facts to support such a claim became apparent (after the conclusion of legal and other proceedings against Giliberti and certain other parties). IRC 6511(d) provides that a taxpayer has seven (7) years to claim a loss from worthless securities or business bad debts. The debts arising from Devine's business with Giliberti became worthless in the 2008 tax year. Thus, the deadline for Devine to claim a loss from the business bad debts owed by Giliberti was April 15, 2016. Accordingly, on April 8, 2016, Devine timely filed his amended 2008 tax return, attaching an appropriate Form 1045, Application for Tentative Refund, making an election to carryback his 2008 losses to the five-year period comprising tax years 2003 through 2007.

15.    By letter dated May 10, 2016, the IRS, relying on Rev. Proc. 2009-26, disallowed Devine's five-year carryback election on the grounds that his election was untimely because it was not made by the October 15, 2009 deadline set forth in Rev. Proc. 2009-26. Instead, the IRS allowed Devine to carryback his NOLs for only tax years 2006 and 2007. The only basis asserted by the IRS for disallowing the five-year election permitted under PL 111-5 was the October 15, 2009 deadline set by the IRS in Revenue Procedure 2009-26.

16.    The key issue to be decided in this case is whether the IRS may prescribe by Revenue Procedure a statute of limitation cutting off a taxpayers' time to elect a carryback, permitted by a statute enacted by Congress, without following the procedural requirements of the APA.

# REDACTED

17.     Devine submits that Revenue Procedure 2009-26 should be vacated because it was issued in violation of the procedural requirements of the APA.

## II.     PARTIES

18.     Plaintiff Timothy C. Devine is a U.S. citizen and resident of the State of California, with social security number ███-0161.  Mr. Devine's mailing address is 1400 Devlin Drive, Los Angeles, CA 90069.

19.     Defendant is the United States of America.

## III.     JURISDICTION AND VENUE

20.     Jurisdiction is conferred on this Court by Title 28, United States Code ("U.S.C.") § 1346(a)(1); IRC § 7422; 28 U.S.C. § 1331; and 5 U.S.C. § 553, §§ 701 to 706. Venue is proper under 28 U.S.C. §§ 1391 and 1396.  This complaint is timely filed pursuant to IRC §§ 6511(d)(1), 6532(a)(1) and 7422; and 28 U.S.C. §§ 1340 and 1491. No adequate remedy for the claims of Plaintiff is available elsewhere. 5 U.S.C. § 704.

## IV.     PLAINTIFF HAS EXHAUSTED HIS ADMINISTRATIVE REMEDIES

21.     The IRS transcript for the tax period ending December 31, 2003 reflects that on April 15, 2004 the IRS received botha tax payment  of $249,920, and a timely filed request for extension and on September 27, 2004, the IRS received the Plaintiff's Form 1040, Individual Income Tax Return, for the Tax Year 2003. The return for this period was filed with the Office of the Internal Revenue Service at Fresno, California. [*See* Exhibit 1]

22.     The IRS transcript for the period ending December 31, 2004 reflects that the IRS received on April 15, 2005 both a tax payment of $305,216 and a request for extension and on January 31, 2006, the IRS received Plaintiff's Form 1040, Individual Income Tax Return, for the Tax Year 2004. The return for this period was filed with the Office of the Internal Revenue Service at Fresno, California. [*See* Exhibit 2]

# REDACTED

23. The IRS transcript for the tax period ending December 31, 2005 reflects that the IRS received on April 15, 2006 both a tax payment of $246,692 and a request for extension of time and on March 7, 2007, the IRS received Plaintiff's Form 1040, Individual Income Tax Return for the Tax Year 2005. The return for this period was filed with the Office of the Internal Revenue Service at Fresno, California. [*See* Exhibit 3]

24. The IRS transcript for the tax period ending December 31, 2006 reflects that the IRS received on April 15, 2007 both a tax payment of $244,565 and a request for extension of time and on October 19, 2007, the IRS received Plaintiff's Form 1040, Individual Income Tax Return, for the Tax Year 2006. The return for this period was filed with the Office of the Internal Revenue Service at Fresno, California.  [*See* Exhibit 4]

25. The IRS transcript for the tax period ending December 31, 2007 reflects that the IRS  received on April 11, 2008 a request for extension of time and received on April 15, 2008 a tax payment of $94,272 and received on October 7, 2008 Plaintiff's Form 1040, Individual Income Tax Return, for the Tax Year 2007. The return for this period was filed with the Office of the Internal Revenue Service at Fresno, California.    [*See* Exhibit 5]

26. The IRS transcript for the tax period ending December 31, 2008 reflects that the IRS received on April 14, 2014 Plaintiff's Form 1040, Individual Income Tax Return, for the Tax Year 2008.  The return for the period here involved was filed with the Office of the Internal Revenue Service at Fresno, California. [*See* Exhibit 6]

27. On April 8, 2016, Plaintiff timely filed with the IRS Form 1045, "Application for Tentative Refund NET OPERATING LOSS CARRYBACK FROM 2008 under Internal Revenue Code ["IRC"] section 172(B)(1)(H)," requesting a net operating loss ("NOL") in the amount of $2,925,326; with refunds in the amount of: $230,119, $280,010, $211,701, $167,063

REDACTED

respectively for Tax Years 2003, 2004, 2005 and 2006. Plaintiff requested the NOL for tax year 2008, under IRC §6511(d)(1), based on a business debt that became worthless, as interpreted under §166(a)(1), in tax year 2008. Pursuant to Treasury Regulation §1.166-1(b), Taxpayer provided a statement of facts substantiating the deduction claimed under §166 on account of bad business debts. The returns for the periods involved here were filed with the Department of the Treasury, Office of the Internal Revenue Service at Fresno, California. [*See* Exhibit 7]

28. By letter dated May 10, 2016, Plaintiff received IRS LTR 4734C. The letter stated that "Your letter indicates you are electing the 5-year extended carryback period under the American Recovery and Reinvestment Act of 2009. The election had to be filed on or before Oct. 15, 2009. Your 2008 tax return was not filed until Apr. 14, 2014. A timely election could not have been made." The same letter stated that Plaintiff "can file claims carrying back the loss to 2006 and 2007, the standard 2 year period." The LTR 4734C provided 30 days from the date of the letter for the Plaintiff file for the 2006 and 2007 carryback claim. [*See* Exhibit 8]

29. On June 9, 2016, Plaintiff submitted the requested information and supporting documents via the United States Postal Service, as shown on the certified mail and return receipt to the IRS dated June 9, 2016. In the June 9, 2016 submission, Plaintiff stated that he is "providing the requested information, [but] this response is not to be interpreted as [Plaintiff's] acquiescence to the initial determination that the election of the 5-year extended carryback period under the American Recovery and Reinvestment Act of 2009 was untimely. The [Plaintiff] firmly believes that he is entitled to the extended carryback period under the law." [*See* Exhibit 9]

30. On June 9, 2016, Plaintiff filed with the IRS Form 1045, "AMENDED AS REQUESTED Application for Tentative Refund NET OPERATING LOSS CARRYBACK

REDACTED

FROM 2008 under Internal Revenue Code ["IRC"] section 172(B)(1)(H)," requesting a NOL in the amount of $2,925,326; with refunds in the amount of: $232,312 and $20,726 respectively for Tax Years 2006 and 2007.  Plaintiff requested the NOL for tax year 2008, under IRC §6511(d)(1), based on a business debt that became worthless, as interpreted under §166(a)(1), in tax year 2008.  Pursuant to Treasury Regulation §1.166-1(b), Taxpayer provided a statement of facts substantiating the deduction claimed under §166 on account of bad business debts. The returns for the periods here involved were filed with the Office of the Internal Revenue Service, Kansas City, Missouri.  [*See* Exhibit 9]

      31.    The June 9, 2016, submission was timely, as it was filed within the 30-day window indicated on the May 10, 2016 the LTR 4734C. On June 13, 2016, the IRS received the Plaintiff's June 9, 2016, submission as evidenced by return receipt.  [*See* Exhibit 10]

      32.    By letter dated June 20, 2016, Plaintiff received IRS LTR 105C, Disallowance of Claim of refund, for all Tax Years of 2003, 2004, 2005 and 2006, stating as follows: "We allowed an additional 30 days from our correspondence to make the required corrections.  We have received no response and must now disallow your carryback claims." LTR 105C contained a provision for an Appeal within 30 days from the date of the June 20, 2016 letter, with the Office of Appeals. [*See* Exhibit 11]

      33.    On July 11, 2016, Plaintiff timely filed with the IRS a letter of Appeal, in reply to LTR 105C, Disallowance of Claim of refund, for all tax years of 2003, 2004, 2005, and 2006. The Appeal letter stated among other factors, that IRS employee, Ms. Maier, ID# 1003229973 by telephone call dated June 6, 2016, stated the submission must be either received or postmarked within 30 days of May 10, 2016; and that IRC §7502(a)(1) and (2) state that timely mailing is treated as timely filing. The Appeal was filed with the Internal Revenue Service, Office of

Appeals, Kansas City, Missouri. [*See* Exhibit 12]

34. On July 14, 2016, Plaintiff filed a Form 911, Request for Taxpayer Advocate Service Assistance with the Taxpayer Advocate Service stating that the Plaintiff's response to the May 10, 2016 letter was timely filed, since Plaintiff's response was "postmarked on 6/9/16 and receipt by 6/13/16," by certified mail receipt, a date within 30 days of the May 10, 2016 LTR 4743C; and that the IRS should not have denied the refund for such a timely filed response by the Taxpayer. On August 31, 2016, Plaintiff also contacted Glenda Field, Taxpayer Advocate, Kansas City Office, reiterating the same objections as provided within Plaintiff's Form 911. [*See* Exhibit 13]

35. By letter dated September 14, 2016, Plaintiff received correspondence from Glenda Field, Taxpayer Advocate Office, stating that she is "working to resolve Plaintiff's issue concerning the disallowance of your claim and your request for an appeal for the tax periods [2003, 2004, 2005 and 2006] shown above." By letter dated September 30, 2016, Plaintiff receive a second correspondence from Glenda Field, stating that "the IRS is continuing to disallow your claim and has forwarded your case to the Appeal's office." [*See* Exhibit 14]

36. By letter dated February 21, 2017, Plaintiff received correspondence from Glenda Field, Taxpayer Advocate Office, stating that the Appeal's Office processed Plaintiff's claims for refund for tax years 2006 and 2007. Ms. Field enclosed IRS Letter 662C, dated February 24, 2017, which provided Plaintiff refunds as follows: Tax year 2006 in the amount of $255,237.21, which includes interest paid by the IRS of $22,925.21; and Tax year 2007 in the amount of $27,593.41, which includes interest paid of $2,478.41. [*See* Exhibit 15]

37. By letter dated January 12, 2017, Plaintiff received correspondence from the IRS Appeals Office, Ogden, UT, disallowing in full the refund requested for tax years 2003, 2004

# REDACTED

and 2005, with provision to file suit within "either the United States District Court or the United States Court of Federal Claims within two-years from the date on the letter denying your claim, which the Kansas City IRS Campus mailed to you on June 20, 2016." [*See* Exhibit 16]

38. Plaintiff has exhausted his administrative remedies within the IRS.

39. Devine requests refunds in the following amounts for the following years:

| Year | Refund Amounts |
|---|---|
| 2003 | $230,119 |
| 2004 | $280,010 |
| 2005 | $211,701 |
| TOTAL: | $721,830 |

### V.    STATEMENT OF CLAIM

**REVENUE PROCEDURE 2009-26 WAS ISSUED IN VIOLATION OF THE PROCEDURAL REQUIREMENTS OF THE APA AND SHOULD BE VACATED**

40. This is a civil action arising under Code §§ 6511(d)(1) and 7422(a), claim for refund, for payments of tax made by Plaintiff for Tax Years 2003, 2004, and 2005 ("Tax Periods") as delineated on Form 1045.  [*See* Exhibit 7].

41. The basis for the Plaintiff's claim for refund is that the Commissioner erroneously denied the refund claim. In February 2009, Congress amended Section 172(b)(1)(H) of the Code, to extend the carryback period to up to five years for 2008 net operating losses incurred by an "eligible small business." PL 111-5 §1211(a)(iii).

42. This law specified that the five-year NOL carryback election "shall be made in such manner as may be prescribed by the Secretary, and shall be made by the due date (including

extension of time) for filing the taxpayer's return for the taxable year of the net operating loss." PL 111-5, § 1211(a)(iii).

43. Devine elected the 5-year carryback for his 2008 losses by timely filing a Form 1045 on April 8, 2016.

44. By letter dated May 10, 2016, Plaintiff received IRS correspondence, LTR 4734C. The letter stated that "Your letter indicates you are electing the 5-year extended carryback period under the American Recovery and Reinvestment Act of 2009. The election had to be filed on or before Oct. 15, 2009. Your 2008 tax return was not filed until Apr. 14, 2014. A timely election could not have been made." [*See* Exhibit 8].

45. The IRS's determination is incorrect because with respect to bad debts and worthless securities, such as the bad debts that caused Devine's losses, the due date for filing a return for the taxable year of the net operating loss is seven years. IRC § 6511(d). Thus, the due date for filing the Devine's return for the taxable year of a net operating loss in 2008 is within seven years, or by April 15, 2016. The IRS, in fact, stated within Plaintiff's LTR 105C, that the Plaintiff had until April 15, 2016, to claim the NOL for tax year 2008. [*See* Exhibit 11]

    **A. Revenue Procedure 2009-26 Was Issued in Violation of the Notice and Comment Requirements of The APA And Should Be Vacated**

46. In this case, the only basis asserted by the IRS for disallowing Devine's election of the 5-year carryback was the October 15, 2009 deadline set by the IRS in Rev. Proc. 2009-26.

47. The issuance of rules by federal agencies is governed by 5 U.S.C. § 553 ("Section 553"). Pursuant to Section 553, Federal agencies involved in rulemaking are required to publish a Notice of Proposed Rulemaking ("Notice") in the Federal Register and provide interested persons the opportunity to comment on the proposed rule before it is adopted as a final rule. 5 U.S.C. § 553 (b), (c), and (d). Section 553(b) requires such Notice to be published in the Federal

Register, except for interpretative rules, statements of policy or rules of agency organization procedure or practice.

48.     Section 553(c) requires that after such notice, the public must be given "an opportunity to participate in the rule making through submission of written data, views or arguments", and further requires that "the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose." 5 U.S.C. § 553(c).

49.     The IRS is a federal agency and issuance of its rules is governed by Section 553. As ruled by the Supreme Court, "[w]e are not inclined to carve out an approach to administrative review good for tax law only." *Mayo Found. v. United States,* 131 S.Ct. 707 (2011) ("*Mayo*").

50.     Section 706(2)(A) requires that a reviewing court "hold unlawful" a rule that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The enactment of a rule in violation of the notice and comment provisions of Section 553 is "arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law" subject to review pursuant to 5 U.S.C. § 706(2)(A).

51.     The I.R.S. did not file a Notice pursuant to Section 553 before enacting the October 15, 2009 deadline provided in Rev. Proc. 2009-26.  According, the October 15, 2009 deadline set forth in Rev. Proc. 2009-26 should be vacated as unlawful.

**B.  The Limited and Narrow Exceptions to the APA's Notice and Comment Requirements are Not Applicable to Rev. Proc. 2009-26**

52.     None of the exceptions to the APA's notice and comment requirements apply to the issuance of the October 15, 2009 deadline within Rev. Proc. 2009-26

53.      For purposes of the APA, interpretative rules are distinguished from substantive rules, which are subject to the APA provisions.  "[S]ubstantive rules" are "rules [that] have the

force and effect of law." [1]  An interpretative rule is not subject to the APA's notice and comment provisions, because it does not affect a taxpayer's individual rights and obligations.

54. The October 15, 2009 deadline within Rev. Proc. 2009-26 is not an interpretative rule, because it is not merely interpreting PL 111-5 by providing examples or information on how to understand or construe PL 111-5. The deadline enunciated by the IRS in Rev. Proc. 2009-26, on a 2008 NOL carryback of 5 years, is a substantive rule as it affects taxpayers' (*e.g.,* Plaintiff's) individual rights and obligations.

55. The deadline in Rev. Proc. 2009-26 is highly specific and effects a *particular* change on IRC § 6511(d).  IRC § 6511(d) ordinarily provides taxpayers with a seven (7) year deadline to elect a NOL carryback.  Contrary to the provisions of IRC § 6511(d), Rev. Proc. 2009-26 purports to enact a rule requiring taxpayers to submit an NOL election for tax year 2008 by October 15, 2009 as the sole and exclusive mechanism for taxpayers to obtain the 5-year extended carryback provided in PL 111-5.

56. As a result of the issuance of the deadline in Rev. Proc. 2009-26, the Plaintiff suffered the loss of $721,830 in refunds, plus statutory interest thereon.

57. By establishing a specific date deadline that does not consider other statutory provisions providing for up to seven years to make an election, Rev. Proc. 2009-26 makes substantive modifications to the application of IRC § 6511(d) and PL 111-5. The rule delineated within Rev. Proc. 2009-26 is a substantive rule.

58. The rule constitutes final reviewable agency action because it is a substantive rule that binds the IRS. *See* 5 U.S.C. § 704. It is, thus, subject both to the APA and to review by this Court. 5 U.S.C. § 706(2)(A).

---

[1] Attorney General's Manual on the Administrative Procedure Act, 30 note 3 (1947).

59. For example, a recent United States Court of Appeals for the District of Columbia Circuit held that the refund mechanism established by the IRS in Notice 2006-50, was a substantive rule that bound the IRS, and thus was final reviewable agency action and remanded to the district court to rule on the taxpayers' APA claims. *Cohen v. U.S.,* 650 F.3d 717 (D.C. Cir. 2011). The district court held that Notice 2006–50 was promulgated without notice and comment in violation of the APA. *In re Long–Distance Tel. Serv. Fed. Excise Tax Refund Litig. (Long Distance Tel. II)*, 853 F.Supp.2d 138, 142–43 (D.D.C. 2012). After finding a violation of the APA, the district court vacated the Notice, *id.* at 146, and the United States Court of Appeals for the District of Columbia Circuit affirmed the holding. *In re Long–Distance Tel. Serv. Fed. Excise Tax Refund Litig.,* 751 F.3d 629 (D.C. Cir. 2014).

60. In issuing Rev. Proc. 2009-26, the IRS also failed to comply with the APA's notice and comment requirements. The October 15, 2009 deadline enacted within Rev. Proc. 2009-26 is invalid because the IRS failed to provide an effective notice that the deadline would alter the ordinary deadlines set forth in IRC § 6511(d) and, thereby failed to provide persons a reasonable opportunity to comment on the impact of such a change to IRC § 6511(d).

61. This failure to properly put the public on notice of the substantive change is a blatant failure to follow the APA.

C. **The IRS's Issuance of Rev. Proc. 2009-26 Failed to Provide APA Section 553's Required Statement of Basis and Purpose**

62. In addition to notice and comment, Section 553(c) requires that "the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose."

63. The objective of requiring a statement of the basis and purpose is to enable courts, which have the duty to exercise review, to be aware of the legal and factual framework underlying the agency's action. "The reason the lack of a rationale renders a [rule] invalid is that

a court cannot evaluate the reasonableness of a [rule] without a statement of the purpose and basis." *American Standard, Inc.*, 220 Ct. Cl. 411, 602 F.2d 256 (1979)

64. When enacting the October 15, 2009 deadline, the IRS failed to provide a concise general statement of the rule's basis and purpose relative to absolutely contradicting PL 111-5(a)(iii), thereby usurping the power of Congress.

65. The IRS's failure to provide its statement of basis and purpose relative to the Rule renders the Rule invalid.

### D. Rev. Proc. 2009-26 is Invalid Because the IRS Violated the APA's "Excess of Statutory Jurisdiction" Standard

66. The APA forbids agency action "in excess of statutory jurisdiction authority, or limitations." 5 U.S.C. § 706(2)(C).

67. The deadline set by Rev. Proc. 2009-26 is invalid, because the IRS exceeded the delegation of rule-making power granted to it within PL 111-5, in promulgating the procedure.

68. The IRS failed to cite to *any* specific authority for contradicting the express language of PL 111-5(a)(iii). By its plain terms, PL 111-5 states that "the election shall be made ***by the due date*** . . . for filing the taxpayer's ***return for the taxable year of the net operating loss.***" § 1211(a)(iii) (emphasis added).

69. Pursuant to IRC § 6511(d), the due date for filing the Plaintiff's ***return for the taxable year of the net operating loss*** is seven years, with respect to bad debts and worthless securities.

70. The language of PL 111-5 did not modify Code § 6511(d) and by its terms tied the due date for making an election for the five-year carryback to the "due date (including extension of time) for filing the taxpayer's return for the taxable year of the net operating loss." The "due date" is determined by other sections of the Revenue Code, including IRC § 6511(d). Congress did not provide evidence of any intent to modify how that due date is calculated.

REDACTED

71. Specifically, in exercising its authority relative to proscribing an election for the five-year NOL carryback, the IRS was *not* empowered to alter the seven-year NOL election for filing for a refund claim under IRC § 6511(d). Many taxpayers may not be able to accurately identify and quantify a loss which meets the rules of § 6511(d) until years later. This is the precise reason why Congress saw fit to enact § 6511(d), thereby expressly an intent to extend the period of time, a seven year look back window, for making a claim for an NOL. The deadline enacted by the IRS in Rev. Proc. 2009-26 is contrary to the policy adopted by Congress in enacting a seven-year deadline in § 6511(d). The IRS was not empowered to proscribe a Rule limiting the election for a claim for refund for a net operating loss to an arbitrary date certain of October 15, 2009.

72. Moreover, PL 111-5 was enacted to bring relief to taxpayers who, like Devine, had experienced significant economic hardships in tax year 2008, by allowing such eligible taxpayers to carryback a tax year 2008 NOL to the 5 prior years. The point of PL 111-5 was to offset losses disproportionately incurred in 2008, against income from the previously prosperous five years.

73. Plaintiff falls exactly within this group of eligible taxpayers who suffered excessive economic hardship in 2008. After having experienced financial success in the five years prior to 2008, Plaintiff suffered a devastating multi-million dollar loss in 2008; and meets the requirement to recover taxes paid within the five prior carryback eligible years.

74. Nothing in the plain language of PL 111-5 presents any time limitation on carryback of an NOL and by its terms proscribes a 5-year NOL carryback.

75. By it plain terms, PL 111-5 states that "the election shall be made **by the due date** . . . for filing the taxpayer's *return for the taxable year of the net operating loss.*" § 1211(a)(iii)

(emphasis added). PL 111-15 does not alter the ordinary due date for claiming a net operating loss with respect to bad debts and worthless securities, which is seven years pursuant to IRC § 6511(d).

76. When Congress intents to alter the ordinary deadlines for net operating losses, it does so by explicit language. Just five (5) years earlier, Congress did impose a date certain when it enacted the Working Families Tax Relief Act of 2004, PL 108-311, October 5, 2004, 118 Stat 1166 ("PL 108-311"). Congress amended this same Code § 172, to provide a five-year net operating loss carryback period for tax years ending in 2001 and 2002. Congress stated: "any election made under section 172(j) of such Code shall (notwithstanding such section) *be treated as timely made if made before November 1, 2002.*" PL 108-311, § 403(b)(2)(C) (emphasis added).

77. If Congress intended to limit the claim for 2008 NOL carrybacks to claims made by October 15, 2009, Congress could have adopted a date certain in PL 111-5. Congress did not do so.

78. Thus, any imposition of a date certain by the Secretary is a substantive rule promulgated by a federal agency (IRS) which must meet the procedural requirements of the APA, 5 U.S.C. §§ 553, 701-706.

79. The IRS exceeded its statutory jurisdiction authority by issuing the October 15, 2009 deadline and, therefore, the deadline is invalid. 5 U.S.C. § 702(2)(A).

## VI.     BURDEN OF PROOF

80. Defendant has the burden of proof under Section 7491 of the Code.

# REDACTED

## VII.   RELATED CASES

81.   This case is not directly related to any pending or previously filed cases in the United States Court of Federal Claims.

## VIII.   PRAYER

WHEREFORE, Plaintiff respectfully prays for judgment against the United States in the sums of $230,119, $280,010 and $211,701 for Tax Years 2003, 2004 and 2005, respectively, together with statutory interest thereon as provided by law; and Plaintiff respectively requests this Court to rule as follows:

(a) Decree that the October 15, 2009 deadline enunciated within Rev. Proc. 2009-26 is invalid, and vacate the rule as it was unlawfully issued without adherence to the requirements of the APA.

(b) Decree that if the Rule cannot be separated from Rev. Proc. 2009-26, that the entirety of Rev. Proc. 2009-26 is invalid and vacate Rev. Proc. 2009-26 because it was unlawfully issued without adherence to the requirements of the APA.

(c) Decree that Plaintiff's claim for refund is timely.

(d) Decree that the Internal Revenue Service reverse the denial of the Plaintiff's refund claim for Tax Years 2003, 2004 and 2005.

(e) Award Plaintiff the costs of bringing this action, including the payments of reasonable attorneys' fees.

(f) Award Plaintiff's reasonable administrative and litigation costs and attorneys' fees at a premium over the statutory rate, as the position of the IRS is not "substantially justified" for purposes of 26 U.S.C. 7430(c)(4)(B).

(g)  Grant such other relief, legal or equitable, as the Court deems just and proper.

Dated: New York, New York  
June 19, 2018

Respectfully submitted,

CKR LAW, LLP

By:   */s/ Michael James Maloney*  
Michael James Maloney  
*Counsel of Record*  
1330 Avenue of the Americas  
14th Floor

REDACTED

New York, NY 10019
Telephone: 212-259-7300
Fax: 212-259-8200
mmaloney@ckrlaw.com

Elizabeth K. Nelson
…*Of Counsel*
California State Bar No 141077
1800 Century Park East, 14th Floor
Los Angeles, CA 90067
Telephone: 310-892-0339
Fax: 310-388-5543
enelson@ckrlaw.com

*Attorneys for Plaintiff Timothy C. Devine*